IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PAUL W. LAUMANN, III, *et al.*, | : | Case No. 1:14-cv-00457 |
| Plaintiffs, | : | Judge Susan J. Dlott |
| v. | : | |
| ALTL, INC., *et al.*, | : | **ORDER GRANTING DEFENDANTS'** |
| | : | **MOTION FOR PARTIAL SUMMARY** |
| Defendants. | : | **JUDGMENT** |

Plaintiffs Paul and Monica Laumann, husband and wife, bring this civil suit against Defendants ALTL, Inc., a trucking company, and Robert C. Snyder, Jr., a tractor-trailer driver, in the wake of a collision that occurred on June 5, 2012 (Doc. 1 ¶ 11).  Their Complaint contains ten causes of action:  (1) negligence (against Snyder); (2) negligence *per se* (against Snyder);  (3) punitive damages (against Snyder); (4) vicarious liability (against ALTL); (5) strict liability (against ALTL); (6) negligent hiring and retention (against ALTL); (7) negligence *per se* (against ALTL); (8) punitive damages (against ALTL); (9) loss of consortium (against both); and (10) a claim disputing any right to subrogation by involuntary Plaintiff Ohio Bureau of Workers' Compensation.  Pursuant to Fed. R. Civ. P. 41(a)(1)(A), Plaintiffs have dismissed, without prejudice, their second, third, fifth, and seventh causes of action (Doc. 26 ¶ 1).  Further, the parties have stipulated and agreed that Plaintiffs will not pursue their claim for negligent hiring asserted in their sixth cause of action (*id.* ¶ 2).  Additionally, Defendant Snyder has stipulated to liability only regarding Plaintiffs' first cause of action for negligence against him (*id.* ¶ 3) and Defendant ALTL has stipulated to liability only regarding Plaintiffs' fourth cause of action against it (*id.* ¶ 4).

1

Before the Court is Defendants' Motion for Partial Summary Judgment (Docs. 19, 25). They seek judgment as a matter of law with regard to the remaining negligent retention claim asserted against ALTL in Plaintiffs' sixth cause of action and with regard to the punitive damages claim against ALTL in Plaintiffs' eighth cause of action. Were the Court to grant the relief Defendants seek, remaining for trial would be only the issue of compensatory damages owed to Mr. Laumann in connection with his negligence and vicarious liability claims against Snyder and ALTL, respectively, and Mrs. Laumann's loss of consortium claim (*see* Doc. 19 at PageID 82-83). Plaintiffs oppose Defendants' motion, arguing that their claims for negligent retention and punitive damages should be heard and decided by a jury (*see* Doc. 20). Were the Court to deny Defendants' motion, left for trial would be not only the issue of compensatory damages owed to Mr. Laumann in connection with the negligence and vicarious liability claims against Snyder and ALTL, respectively, and Mrs. Laumann's loss of consortium claim, but also the issue of compensatory and punitive damages owed to Mr. Laumann in connection with the negligent retention claim asserted against ALTL (*see* Doc. 20 at PageID 217-18).

For the reasons that follow, Defendants' motion will be **GRANTED**.

I.   **BACKGROUND**[1]

Defendant Snyder began his career as a tractor-trailer driver in 2004 when he took a job with Schneider. At the beginning of his employment, he attended a four-week driving school. The program included classroom instruction and in-truck training, with the latter consisting of driving practice in a nearby parking lot. At the end of the program, Snyder received two weeks of on-the-road training under the observation of an experienced Schneider driver. Snyder drove for Schneider for approximately two years. (Snyder Dep., Doc. 24 at PageID 583-84, 591.)

---

[1] Except as otherwise indicated, background facts are drawn from Defendants' Statement of Proposed Undisputed Facts (Doc. 18), having noted Plaintiffs' response thereto (Doc. 20 at PageID 219-21) as well as Plaintiffs' Proposed Disputed Issues of Material Fact (*id.* at PageID 222-24).

2

In January 2006, Snyder accepted a job as a driver for Defendant ALTL.  (*Id.* at PageID 589, 697.)  Before hiring a new driver, ALTL runs a criminal background check and reviews certain reports that are common in the trucking industry, including a Federal Motor Carrier Safety Administration ("FMCSA") report on the candidate's compliance, safety, and accountability ("CSA Report"); a report of the candidate's work and accident history ("DAC Report"); and a State Department report of the candidate's driving history ("MVR Report").  (Lau Dep., Doc. 22 at PageID 422-23.)  ALTL followed its normal course before offering employment to Snyder.  (*Id.* at PageID 243.)

Once hired, each new ALTL driver attends a two-day in-house orientation that involves a review of all of the company's manuals, policies, and procedures.  (*Id.* at PageID 243-44.)  Following the classroom training, each driver completes a three-day road assessment with the city fleet to determine whether the new hire "is ready or capable" to move forward.  (*Id.* at PageID 244.)

ALTL continues to provide training and safety tips to drivers throughout their employment.  It holds an annual company-wide meeting for this purpose.  Drivers also receive individual instruction and training on an ongoing basis.  (*Id.* at PageID 263-64.)  ALTL reviews its employees' FMCSA safety scores each month and their driving records annually.  (*Id.* at PageID 362, 381.)

Under ALTL's standard policies, a driver must report *any* instance in which he contacts something with his tractor-trailer.  ALTL then creates a "Motor Accident Report" for each such instance, which is intended to roughly detail the facts and circumstances thereof.  (Snyder Dep., Doc. 24 at PageID 689, 691.)  Whether the individual continues to be regarded as a "safe driver"

3

in the aftermath depends largely on the severity and frequency of any prior incidents. (Lau Dep., Doc. 22 at PageID 429.)

As earlier mentioned, the accident that underpins this lawsuit occurred on June 5, 2012. By this date, Snyder had been a driver for ALTL for six years, logging approximately 125,000 miles each year. (Snyder Dep., Doc. 24 at PageID 649.) In this period, he was involved in seven instances that resulted in a "Motor Accident Report" being prepared. They are as follows:

- July 2, 2007: Snyder's tractor-trailer hit something while backing. He remembers no particular details other than, if there was any property damage, it would have been to his vehicle. (*Id.* at PageID 694.)

- January 18, 2008 (six months later): Snyder was turning left at a four-way stop in Queens, New York. The rear corner of his trailer, which he cannot see while turning, clipped a car parked in a crosswalk. No traffic citation was issued by the police. (*Id.* at PageID 694-697, 701.)

- January 18, 2008 (the same day): Snyder was backing into a customer's loading dock, made dark by virtue of the roof over it. He broke two of the corner hinges on the rear door of his trailer when they clipped a chimney that protruded from an inside wall. (*Id.* at PageID 697-98.)

- October 21, 2008 (nine months later): Snyder hit a deer on I-65 that resulted only in damage to the front headlight assembly of his tractor. (*Id.* at PageID 699.)

- October 23, 2008 (two days later): While turning right at a traffic light, Snyder hit a car that was stopped but in operation. That car had just turned right on red at the end of an exit ramp off I-465. In an attempt to maneuver itself into the far left turn lane going north, the car crossed three lanes and then abruptly stopped ten feet out. No traffic citation was issued by the police. (*Id.* at PageID 702-06.)

- March 2, 2010 (one year, four months later): Snyder turned too sharply and a fairing bracket on the back side of the tractor caught against the side of the trailer. (*Id.* at PageID 707-08.)

- January 9, 2011 (ten months later): Snyder hit a small sign and a tree when his truck tandem went up over a curb. This contact occurred after he had been required to make three successive turns (left, left, right) into a "tight little parking lot" to make an office delivery. (*Id.* at PageID 708-10.)

One year and five months pass. After his customary weekend off, on Monday, June 4, 2012, Snyder picked up his tractor from ALTL in Hudsonville, Michigan and then "bobtailed" to the shipper located 12 miles away to pick up a cargo trailer. (*Id.* at PageID 592-97.) He drove for six hours, arriving in Cincinnati around 7:00 p.m. He spent the entire evening in the yard of the first customer, eating and sleeping in the birth of the tractor. (*Id.* at PageID 597-98.)

The next morning, Snyder's trailer was partially unloaded and he began his drive to the second leg of his trip—Atlanta, Georgia—at approximately 7:45 a.m. (*Id.* at PageID 607-09.) Heading southbound on I-75, he encountered "stop-and-go" traffic. In addition, the first (or farthest right) lane was blocked by a motorcycle unit from the Cincinnati Police Department. Accordingly, vehicles in that lane began to look for an opportunity to switch into the second and third lanes. To accommodate this flow, Snyder moved from the second lane to the third. At this point, the speed at which all vehicles were proceeding was no more than five-to-ten miles per hour. Within a mile or so, Snyder then changed lanes from the third back to the second, as trucks typically travel only in the first two lanes. (*Id.* at PageID 611- 15.) Despite the fact that he checked his mirrors, Snyder did not see Mr. Laumann's vehicle, which, at the time, was travelling in the "blind spot" on the passenger side of the truck. The front right passenger side of his tractor clipped the left rear quarter panel of Mr. Laumann's vehicle. (*Id.* at PageID 625-27.) This contact caused Mr. Laumann's vehicle to "spin" in front of Snyder's truck before it stopped near the median. Snyder felt no impact, but assumed he must have hit Mr. Laumann. He slammed on his brakes to avoid any further impact. (*Id.* at PageID 628-31.)

Plaintiffs filed suit on June 2, 2014. Mr. Laumann seeks damages for injuries he alleges are the result of the June 5, 2012 accident, including, but not limited to, traumatic brain injury (Doc. 1 ¶ 14; Doc. 20 at PageID 201).

## II. STANDARD OF LAW

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The process of evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well-settled.  First, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  This burden may be satisfied, however, by the movant "pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the opposing party must submit evidence in support of any material element of the claim or defense at issue in the motion on which it would bear the burden of proof at trial.  *Celotex*, 477 U.S. at 331-32.  As "the requirement [of the Rule] is that there be no *genuine* issue of *material* fact," the Supreme Court has made clear that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original).  Ancillary factual disputes, those "that are irrelevant or unnecessary[,] will not be counted." *Id.*  Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position  will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252.  Instead, the opposing party must

6

present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. *Moore v. Philip Morris Companies, Inc.*, 8 F.3d 335, 339-40 (6th Cir. 1993) (applying *Anderson*, 477 U.S. at 249-50; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

At this summary judgment stage, it is not the Court's role "to weigh the evidence and determine the truth of the matter but [rather] to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In so doing, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962))). Adherence to this standard, however, does not permit the Court to assess the credibility of witnesses. *See Adams v. Metiva*, 31 F.3d 375, 378 (6th Cir. 1994) (citing *Anderson*, 477 U.S. at 255)).

**III.   ANALYSIS**

Defendants contend that Plaintiffs' claims of negligent retention and punitive damages lack support in fact and law. The Court agrees.[2]

**A. Negligent Retention**

Under Ohio law, a plaintiff asserting a claim of negligent retention must demonstrate: (1) an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of that incompetence; (4) the employee's act or omission causing the plaintiff's injury; and (5) a causal link between the employer's negligence in retaining the

---

[2] In the alternative, Defendants maintain that, inasmuch as they both have stipulated to liability on negligence regarding the June 5, 2012 accident, the negligent retention claim has been rendered moot, because—even if Plaintiffs were to prevail—they would not be entitled to any additional damages or other remedies. (*See* Doc. 19 at PageID 66.) The Court need not reach this issue given its determination that the negligent retention claim fails as a matter of law.

7

employee and the plaintiff's injury. *Alleman v. YRC,* 787 F. Supp. 2d 679, 683 (N.D. Ohio 2011) (citing *Lehrner v. Safeco Ins./Am. States Ins. Co.*, 171 Ohio App. 3d 570, 2007-Ohio-795, 872 N.E.2d 295, at ¶ 41). Defendants urge that no reasonable juror could conclude that Snyder was incompetent to drive a tractor-trailer, and thus Plaintiffs' claim fails. Defendants are correct.

*Alleman* is instructive. There, summary judgment was granted to a trucking company whose employee—while driving a cab pulling two empty trailers in freezing rain—collided with another vehicle, killing its driver. Finding that the record did not reflect a "lack of competence," Judge Gaughan observed that the driver was trained and licensed, attended regular safety meetings, and had driven tractor-trailers for more than 20 years without being involved in an accident "chargeable" against him. 787 F. Supp. 2d at 683-84. That the driver, prior to dispatch, raised a "safety concern" in connection with the weather forecast did not suffice to establish a genuine issue of material fact as to his competence. *Id.* at 684.

In contrast to *Alleman*, summary judgment was denied to a trucking company and its principals whose driver—having crossed the center line and collided with oncoming traffic—was hired without a background check and based on only a five-mile road test. *Schlegel v. Li Chen Song*, 547 F. Supp. 2d 792, 806-07 (N.D. Ohio 2008). Moreover, the driver spoke no English, did not know how to fill out logs mandated by the FMCSA, and had a United States driver's license (issued in California) for just a few months. *See id.* at 796, 802. Significantly, there was no mention of any, much less ongoing, safety training. In addition, the plaintiff averred that the defendants were involved in a scheme in which they had "folded and re-opened trucking operations after substandard compliance reviews conducted by the Department of Transportation and the subsequent fines levied against [them] for violations of Federal Regulations." *Id.* at 802.

Here, nothing in Snyder's background bespeaks incompetence.  He came to ALTL with two years' experience from Schneider, where he attended a four-week training course followed by two-weeks of on-the-road training.  Prior to hire, ALTL ran a criminal background check and reviewed his CSA, DAC, and MVR Reports.  Post-hire, Snyder participated in ALTL's orientation and passed a three-day road test.  Throughout his employment, Snyder attended annual safety meetings and routinely received individual instruction and safety tips.  ALTL reviewed his FMSCA safety scores monthly and his driving record annually.

Snyder drove for ALTL for six years prior to the accident.  In that time band, he estimated that he logged 125,000 miles annually, for a total of 750,000 miles, and filed only seven Motor Accident Reports.  In one instance, Snyder hit a deer that leapt in from of him.  As even Plaintiffs agree (*see* Doc. 20 at PageID 203, 204), this accident could not be avoided.  In two instances, Snyder struck a stopped vehicle.  The remaining four instances occurred on private property when Snyder was maneuvering his tractor-trailer in tight and sometimes poorly lit confines.  The last one, on January 9, 2011, occurred one year and five months prior to the June 5, 2012 accident.

Plaintiffs' description of these instances as "crashes" is a gross exaggeration, and their position that ALTL "put profits before the safety of people using the same roads as Defendant Snyder" (*see id.* at PageID 204) lacks any support.  That ALTL requires a Motor Accident Report regardless of the severity of the contact would suggest concern—rather than contempt— for safety, even if done for purposes of insurance reporting.  Regardless, no reasonable juror could conclude that they "warranted [his] removal" (*see id.*).  These seven Reports amount to less than one per 100,000 miles driven.  No personal injury resulted.  Other vehicles were involved only twice, and they were stopped rather than in motion.  Snyder was never cited.  And

9

property damage, if any, was negligible. In the absence of supporting case law, Counsel's rhetoric cannot win the day. Accordingly, Defendant ALTL is entitled to judgment as a matter of law with regard to the remaining claim in Plaintiffs' Sixth Cause of Action, negligent retention.

### B. Punitive Damages

An employer can be liable for punitive damages in tort if its actions demonstrate "malice or fraud." *MacNeill v. Wyatt*, 917 F. Supp. 2d 726, 732 (S.D. Ohio 2013) (Litkovitz, M.J.) (citing Ohio Rev. Code § 2315.21). Because the statute does not define "malice," Ohio courts apply the definition set forth in *Preston v. Murty*, 32 Ohio St. 3d 334, 512 N.E.2d 1174, syl. (1987). Hence, an employer must have been aware of a "great probability of causing substantial harm" and then have "consciously disregarded" the injured party's safety. *Id.* at 336, 512 N.E.2d at 1176. Something "more than mere negligence is *always* required." *Id.* at 335, 512 N.E.2d at 1176 (emphasis added). Actual malice must be demonstrated by "clear and convincing evidence." *Kuebler v. Gemini Transp.*, No. 3:12-cv-114, 2013 WL 6410608, at *4 (S. D. Ohio Dec. 9, 2013) (Rose, J.). At its heart is whether there is proof of an employer's conscious disregard "of an *almost certain risk* of substantial harm. *Id.* at *5 (emphasis added).

In support of their claim, Plaintiffs urge only that ALTL was aware of "the multiple crashes Defendant Snyder caused" (*see* Doc. 20 at PageID 216) and did not discipline him therefor or provide any remedial training in their wake. But as the Court noted in its deliberations with respect to their negligent retention claim, Plaintiffs' use of the pejorative term "crash" does not transform these instances into something they were not.

*Alleman, supra*, is again instructive, where the court also held that "[b]eing aware of the dangers that accompany pulling empty doubles in freezing rain does not establish conscious

wrongdoing, which requires more than knowledge of the possibility or probability that harm may occur from a reckless act." 787 F. Supp 2d at 686. As recited previously, Snyder was a licensed, experienced, and highly-trained operator. The seven instances in which his tractor-trailer contacted "something" in the six years prior to the June 5, 2012 accident were inconsequential. Nothing about their circumstances come close to the standard necessary to prove conscious disregard of an *almost certain risk* of substantial harm. Indeed, were this Court to conclude otherwise, it would be inviting reversal on appeal. *See Womack v. Gettelfinger*, 808 F.2d 446, 454 (6th Cir. 1987) (applying Tennessee law). Accordingly, Defendant ALTL is entitled to judgment as a matter of law with regard to the claim for punitive damages pled in Plaintiffs' Eighth Cause of Action.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment (Doc. 19) is **GRANTED**.

**IT IS SO ORDERED**.


Dated: 1/4/16                       S/Susan J. Dlott_____
                                           Judge Susan J. Dlott
                                           United States District Court